```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

ID TECH LLC, d/b/a FROST NYC, and NISON
KAYKOV,

                            Plaintiffs,

                -against-

BAYAM GROUP, INC. d/b/a BAYAM JEWELRY
and TALHA BAYAM,

                          Defendants.

----------------------------------------------------------------X

                                     19-cv-08439 (VF)

                                 **OPINION & ORDER**

**VALERIE FIGUEREDO, United States Magistrate Judge.**

     ID Tech LLC, d/b/a Frost NYC, and Nison Kaykov (collectively, the "Plaintiffs")

commenced this action against Bayam Group, Inc., d/b/a Bayam Jewelry, and Talha Bayam

(collectively, the "Defendants") for (1) false designation of origin under the Lanham Act, 15

U.S.C. § 1125(a); (2) trade dress infringement under the Lanham Act, id.; (3) injury to business

reputation under New York law[1]; (4) trade dress infringement and unfair competition under New

York common law; (5) piercing of the corporate veil; and (6) copyright infringement under the

Copyright Act, 17 U.S.C. §§ 106, et seq. Defendants have moved for summary judgment on all

of Plaintiffs' remaining claims pursuant to Federal Rule of Civil Procedure 56. For the reasons

that follow, Defendants' motion is **GRANTED**.

---

[1] In their complaint, Plaintiffs do not cite a specific statutory provision for this claim. See
ECF No. 36 ¶¶ 51-61. Given the allegations, it appears that Plaintiffs are asserting a claim under
General Business Law (GBL) § 360-l. See MZ Wallace Inc. v. Fuller, No. 18-CV-2265 (DLC),
2018 WL 6715489, at *13-14 (S.D.N.Y. Dec. 20, 2018) ("Section 360-l provides: Likelihood of
injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall
be a ground for injunctive relief in cases of infringement of a mark registered or not registered or
in cases of unfair competition.") (citation omitted).

**BACKGROUND**

A.  **Factual Background**[2]

Plaintiff Nison Kaykov is cofounder of Plaintiff ID Tech LLC, d/b/a Frost NYC,

("Frost"), and Defendant Talha Bayam is the sole owner and chief executive officer of

Defendant Bayam Group, Inc., d/b/a Bayam Jewelry, ("Bayam"). See R. 56.1 Statement ¶¶ 1,9.

Frost and Bayam are online retailers that sell jewelry, including chains, pendants, and bracelets,

supplied by jewelry wholesalers. Id. ¶¶ 3, 11-12, 45. Frost sells jewelry through an online store

with a URL address of "www.frostnyc.com" (the "Frost Website"); Bayam sells jewelry through

an online store with a URL address of "www.bayamjewelry.com" (the "Bayam Website"). Id. ¶¶

2, 10. Plaintiffs launched the Frost Website at the beginning of 2016 and became aware of the

Bayam Website approximately three and a half years later. Id. ¶¶ 46, 47.

Both the Frost Website and Bayam Website were created, at least in part, using templates

provided by Shopify, an e-commerce company. Id. ¶¶ 4, 13-14. The photographs of the jewelry

on the Frost Website, which were taken by independent contractors, were not created by

Plaintiffs. Id. ¶ 35. The Frost Website has a white background and displays the Frost logo

prominently. Id. ¶ 8. The Bayam Website prominently displays the Bayam logo. Id. ¶ 16. Both

the Frost and Bayam Websites house various sub-pages, where jewelry products are displayed

and offered for sale (the "Product Pages"). Id. ¶¶ 12, 33. Each site's Product Pages contain

features that allow customers to select and view different jewelry weights and dimensions, and

ultimately purchase a product. Id. ¶¶ 5, 6, 17, 27.

---

[2] Unless otherwise noted, the facts recounted herein reflect the undisputed, material facts contained in Plaintiffs' Response to Defendants' Local Civil Rule 56.1 Statement of Facts, ("R. 56.1 Statement"). See ECF No. 82.

B. **Procedural History**

Plaintiffs initiated this action in New York Supreme Court, which Defendants removed =
to this Court on September 11, 2019. See ECF No. 1. On September 3, 2020, Plaintiffs filed an
amended complaint, asserting claims against Defendants for (1) false designation of origin in
violation of the Lanham Act; (2) trade dress infringement in violation of the Lanham Act; (3)
injury to business reputation; (4) common law trade dress infringement and unfair competition;
(5) piercing of the corporate veil; and (6) copyright infringement under the Copyright Act. See
Plaintiff's Amended Complaint ("Am. Compl."), ECF No. 36. On December 17, 2020,
Magistrate Judge Debra Freeman entered an order setting April 1, 2022, as the deadline for the
completion of all discovery. See ECF No. 66. In that order, the Court also set the deadline for
summary judgment motions as May 6, 2022. See id. Discovery closed on April 1, 2022. See id.

On May 3, 2022, the parties stipulated to a dismissal with prejudice of all claims against
Defendant Talha Bayam, as well as dismissal of the fifth cause of action in the Amended
Complaint against Defendant Bayam Group, characterized as an action "to pierce the corporate
veil." See Stipulation, ECF No. 73. The stipulation did not include dismissal of Plaintiffs'
Lanham Act claims for false designation of origin and trade dress infringement, or common law
claim for trade-dress infringement and unfair competition. Defendants subsequently moved for
summary judgment on Plaintiffs' (1) claim for false designation of origin under the Lanham Act;
(2) trade-dress infringement claim under the Lanham Act; (3) claim for injury to business
reputation; (4) common law, trade-dress infringement and unfair-competition claims; and (5)
copyright-infringement claim under the Copyright Act. See Defendants' Mem. of Law in
Support of Mot. for Summary Judgment, ECF No. 75 ("Defs.' Mem.").

On March 2, 2023, the Court held a conference in a related case involving the same
parties and same attorneys, Bayam Group, Inc. v. ID Tech LLC, No. 22-CV-08910-VF. At the

conference, the parties confirmed that Plaintiffs had asked Defendants, on March 30, 2022, to

stipulate to a dismissal of the Lanham Act claims and common law trade-dress infringement

claims, and that Defendants had not agreed to stipulate to dismissal of these claims. See Letters

from Steven M. Lester and Mark Makhail, ECF Nos. 90, 91. After Defendants refused to

stipulate to a dismissal of those claims, Plaintiffs did not move under Federal Rule of Civil

Procedure 41(a)(2) for dismissal by court order. Defendants explained at the conference that they

refused to stipulate to dismissal of the Lanham Act claims because they intended to move for

summary judgment and, if they prevailed, to file a request for attorneys' fees. Plaintiffs'

opposition to Defendants' motion for summary judgment addresses the merits of only the

copyright claim and unfair-competition claim based on copyrighted material. See Plaintiffs'

Mem. of Law in Opposition to Mot. for Summary Judgment ("Pls.' Mem."), ECF No. 83.

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential

Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary

judgment motion . . . is carefully limited to discerning whether there are any genuine issues of

material fact to be tried, not to deciding them." Gallo, 22 F.3d at 1224. The moving party bears

the initial burden of demonstrating an entitlement to judgment as a matter of law and identifying

the matter or matters that "it believes demonstrate the absence of a genuine issue of material

fact." Celotex, 477 U.S. at 323; Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir.

2008).

A fact is material when it "might affect the outcome of the suit under the governing law."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of fact is genuine "if the

4

evidence is such that a jury could return a verdict for the nonmoving party." Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (quoting Anderson, 477 U.S. at 248.). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (quoting Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003)) (internal quotation marks omitted); Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008) (noting that the Court must view all facts "in the light most favorable" to the non-moving party). However, a court is not required to draw any inference that is "blatantly contradicted by the record, so that no reasonable jury could believe it." Scott v. Harris, 550 US 372, 380 (2007).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). For a genuine dispute regarding a material fact to warrant a jury trial, there must be sufficient evidence supporting the claimed factual dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no

genuine issue of material fact and a grant of summary judgment is proper." <u>Gallo</u>, 22 F.3d at

1224.

## DISCUSSION

A. **<u>Plaintiffs' Claim for Copyright Infringement</u>**

Plaintiffs' sixth cause of action asserts that Defendants infringed on Plaintiffs'

"copyrighted material" relating to elements of the Frost Website, including images, site layout,

graphics, photographs, and textual content. <u>See</u> Am. Compl. ¶¶ 17, 21-22, 92, 94-95. To prevail

on their claim for copyright infringement, Plaintiffs must establish two elements: "(i) ownership

of a valid copyright; and (ii) unauthorized copying of the copyrighted work." <u>Jorgensen v.

Epic/Sony Records</u>, 351 F.3d 46, 51 (2d Cir. 2003) (citing <u>Feist Publ'ns, Inc. v. Rural Tel. Serv.

Co.</u>, 499 U.S. 340, 361 (1991) and <u>Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.</u>, 150

F.3d 132, 137 (2d Cir.1998)). To demonstrate unauthorized copying, a plaintiff must show that

the defendant infringed on the copyright at issue, meaning that the defendant "(1) has actually

copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists

between the defendant's work and the protectible elements of plaintiff's [work]." <u>Yurman

Design, Inc. v. PAJ Inc.</u>, 262 F.3d 101, 110 (2d Cir. 2001) (emphasis and citation omitted); <u>see

also</u> <u>Zalewski v. Cicero Builder Dev., Inc.</u>, 754 F.3d 95, 100-01 (2d Cir. 2014) (explaining

difference between "copying and wrongful copying" and noting that wrongful copying requires

substantial similarity "between the protected elements of a work and another work"). A plaintiff

must show actual copying, which can be established "either by direct or indirect evidence."

<u>Procter & Gamble Co. v. Colgate-Palmolive Co.</u>, 199 F.3d 74, 77 (2d Cir. 1999) (citation

omitted). "Indirect copying may be shown by demonstrating that the defendant had access to the

copyrighted work and that the similarities between the works are probative of copying." <u>Id.</u>

(citation omitted). Summary judgment may be granted "when any similarities between the works

relate only to non-copyrightable elements or when no reasonable jury could find the two works substantially similar." Jean v. Bug Music, Inc., No. 00-CV-4022 (DC), 2002 WL 287786, at *5 (S.D.N.Y. Feb. 27, 2002) (citing Cantor v. NYP Holdings, Inc., 51 F. Supp. 2d 309, 311 (S.D.N.Y. 1999)).

Defendants contend that summary judgment is appropriate because: (1) Plaintiffs have not identified a registered copyright; (2) Plaintiffs have not shown that any protectable material was copied; and (3) Plaintiffs are unable to show substantial similarity between the Bayam and Frost Websites. See Defs.' Mem. at 16-23. Plaintiffs counter that they have produced a certificate of registration for the copyright at issue here and have presented direct evidence of copying by Defendants, or at least sufficient evidence to raise a genuine issue of material fact. See Pls.' Mem. at 11-15.

### 1. Plaintiffs have not established ownership of a valid copyright.

In their Amended Complaint, Plaintiffs stated that Kaykov was the owner of the copyright alleged to have been infringed by Defendants, "relating to the custom photography, product photographs, arrangement, and other elements of [the Frost] website." See Am. Compl. ¶ 17. No copyright registration was annexed to the Amended Complaint. Instead, in Exhibit A to the Amended Complaint, Plaintiffs included screenshots of various Product Pages of both the Frost Website and Bayam Website. See ECF No. 36-1.

 "'A certificate of registration from the United States Register of Copyrights constitutes *prima facie* evidence of the valid ownership of a copyright.'" Mint, Inc. v. Amad, No. 10-CV-9395 (SAS), 2011 WL 1792570, at *2 (S.D.N.Y. May 9, 2011) (quoting Hamil Am. Inc. v. GFI, 193 F.3d 91, 98 (2d Cir. 1999)) (alteration omitted). Plaintiffs claim that they have satisfied this requirement because they produced the certificate of registration for U.S. Copyright No. TX 8-

656-864, which is for the work titled "Frost NYC Product Catalog (Electronic Version)." <u>See</u> Pls.' Mem. at 11, Ex. 4. This copyright registration—the only one produced by Plaintiffs in this case—is in the name of ID Tech LLC. The Amended Complaint, however, pleads that the allegedly infringed copyright was owned by Kayakov, not ID Tech.[3] <u>See</u> Am. Compl. ¶¶ 17-18, 90-91. Plaintiffs have failed to produce a valid copyright registration for the copyright alleged in the Amended Complaint. On that ground alone, no genuine issue of material fact remains as to whether Plaintiffs have established ownership of the copyright alleged in the Amended Complaint.[4]

**2. Plaintiffs have not demonstrated actual copying of protected material or that the two websites are substantially similar.**

Even if Plaintiffs had shown ownership of a valid copyright, as alleged in the Amended Complaint, Plaintiffs have failed to raise a genuine issue of fact as to whether Defendants have copied *protectable* material. <u>See</u> <u>Feist</u>, 499 U.S. at 348 ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected."); <u>see also</u> <u>Boisson v. Banian, Ltd</u>, 273 F.3d 262, 268 (2d Cir. 2001) ("Simply because a work is copyrighted does not mean every element of that work is protected."). To support their claim of copyright infringement, Plaintiffs point to Defendants having copied the weights and dimensions of the jewelry on the Product Pages of the Frost Website, Pls.' Mem. at 12-13, as well as the design and

---

[3] Plaintiffs state that their predecessor counsel erred in alleging in the Amended Complaint that the copyright at issue was in Kayakov's name. <u>See</u> R. 56.1 Statement ¶ 31. That may be so, but Plaintiffs never sought to correct that error by re-amending their complaint.

[4] To the extent Plaintiffs contend that the copyright at issue is the one owned by ID Tech LLC, Plaintiffs never produced to Defendants a copy of the material on deposit with the Copyright Office, showing the material that is the subject of the copyright, despite requests by Defendants for that information. <u>See</u> Defs.' Mem. at 17.

arrangement of the Frost Website. Id. at 15. As discussed below, the weights and dimensions are not protectable material and the two websites are not substantially similar.

Plaintiffs assert that Defendants copied the jewelry dimensions and weights from the Product Pages of the Frost Website, and that these measurements are entitled to copyright protection. See Pls.' Mem. at 12-13. It is well-established that "facts are not copyrightable." See Feist, 499 U.S. at 344; see also Arica Institute, Inc. v. Palmer, 970 F.2d 1067, 1074-75 (2d Cir. 1992) (reasoning that "facts, whether alone or as part of a compilation, are not original and therefore may not be copyrighted") (citation, alteration, and internal quotation marks omitted). The actual dimensions and weight of the jewelry being sold unquestionably constitute a fact. See, e.g., Sparaco v. Lawler, Matusky, Skelly, Engineers LLP, 303 F.3d 460, 467 (2d Cir. 2002) (stating that a portion of an architectural drawing setting forth "the existing physical characteristics of the site, including its shape and dimensions, the grade contours, and the location of existing elements . . . sets forth facts") (citations omitted).

Plaintiffs nevertheless contend that the jewelry dimensions do not constitute facts because the measurements published on the Frost Website are intentionally inaccurate. See Pls.' Mem. at 12. Plaintiffs contend that because they have intentionally modified the measurements to be slightly less than the actual widths and lengths of each piece of jewelry, the information published on the Frost Website is original and entitled to copyright protection. See Id. at 12-13.

As an initial matter, on the Frost Website, Plaintiffs do not characterize the weights and dimensions of the jewelry being marketed and sold to consumers as inaccurate or fictional. To the contrary, nothing on the Frost Website would indicate to a consumer browsing the jewelry on

the site that the weight and dimensions of an item of jewelry being sold is not accurate.[5] The

dimensions are considered facts because Plaintiffs represent to customers that they accurately list

the jewelry weights to the best of their abilities and that any deviations are inherent to the

handmade nature of the jewelry. See Corbello v. Valli, 974 F.3d 965, 980-81 (9th Cir. 2020)

(stating that "even dubious assertions of truthfulness can prevent an author from later claiming

that part of a work is fiction") (citation omitted); cf. Nester's Map & Guide & Corp. v. Hagstrom

Map Co., 796 F.Supp. 729, 733 (E.D.N.Y. 1992) (explaining that treating "false" facts

represented as actual facts as copyrightable "would mean that no one could ever reproduce or

copy actual facts without risk of reproducing a false fact and thereby violating a copyright").

"Having expressly represented to the world that" the dimensions on its website are accurate for

the products being sold, Plaintiffs are "not now permitted to make an inconsistent claim so as to

better serve its position in litigation." Arica Institute, 970 F.2d at 1075 (citations omitted); see

also Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd., No. 96-CV-

4126 (RWS), 2000 WL 1028634, at *12 (S.D.N.Y. July 25, 2000) (discussing doctrine of

copyright estoppel).

     To further their argument, Plaintiffs rely on the U.S. Supreme Court's decision in Feist,

499 U.S. 340. See Pls.' Mem at 13 n.2. In Feist, which involved a claim of copyright

---

[5] It appears that certain portions of the screenshots of the Product Pages of the Frost
Website are cut off and therefore are not a complete representation of the Product Pages. See
Am. Compl. at Ex. A; Pls.' Mem., Ex. 3. But a review of the current version of the Frost Website
demonstrates that there is no disclaimer that the jewelry widths or lengths are inaccurate or
otherwise fictitious. The Frost Website does contain one disclaimer: that the product weights on
the Product Pages are "approximate as all jewelry is handmade and no two pieces of the same
jewelry will ever be the same weight." Frost NYC Frequently Asked Questions,
https://www.frostnyc.com/pages/faqs (last visited Mar. 7, 2023). But that disclaimer does not
explain that the weights and dimensions listed on the Product Pages are *intentionally* inaccurate;
it merely attributes the potential for slight deviations from actual weights to the fact that the
products are handmade.

infringement over a telephone directory published by a public utility company, the Court made clear that the underlying facts (i.e., the names, towns, and telephone numbers in the directory) were not copyrightable, and that included the fictitious entries inserted by the utility company to detect copying. See 499 U.S. at 361. The only issue in that case was whether the utility company's selection and arrangement of those facts was sufficiently original to satisfy the "minimum constitutional standards for copyright protection." Id. at 362. There, the Court held that the utility company's arrangement of the information in the telephone directory, which was "limited to basic subscriber information and arranged alphabetically," lacked the requisite originality to be copyright protected and thus any copying did not constitute infringement. Id. at 361-64. Feist therefore lends no support for Plaintiffs' position that the fictitious weights and dimensions by themselves are copyrightable. Thus, to the extent Plaintiffs' claim of copyright infringement relies on Defendants having copied the weights and dimensions of the jewelry on the Product Pages, the claim fails because Defendants did not copy any protectable material.

Plaintiffs also claim that Defendants copied the design or arrangement of the Product Pages, arguing that the Bayam and Frost Websites are substantially similar. Pls.' Mem. at 15. Although facts themselves are not entitled to copyright protection, "[a] compilation of non-protectable facts is copyrightable if it 'features an original selection or arrangement of facts.'" MyWebGrocer, LLC v. Hometown Info, Inc., 375 F.3d 190, 193 (2d Cir. 2004) (quoting Feist, 499 U.S. at 350); see also Dominick R. Pilla, Architecture-Eng'g P.C. v. Gilat, No. 19-CV-2255 (KMK), 2022 WL 1003852, at *6 (S.D.N.Y. Mar. 29, 2022) (explaining that "a work may be copyrightable—and therefore may be infringed upon—even if said work is only a compilation of unprotectable elements") (citation omitted). Annexed to the Amended Complaint and to their opposition brief, Plaintiffs included several screenshots of various Product Pages from the Frost

Website. See Am. Compl. at Ex. A; Pls.' Mem. at Ex. 3. Plaintiffs contend that the layout and arrangement of the Product Pages is protected by copyright. See Am. Compl. ¶¶ 17, 92; Pls.' Mem. at 15.

Compilations of fact must possess three elements to be sufficiently original to qualify for copyright protection: "(1) the collection and assembly of pre-existing material, facts, or data; (2) the selection, coordination, or arrangement of those materials; and (3) the creation, by virtue of the particular selection, coordination, or arrangement, of an 'original' work of authorship." Feist, 499 U.S. at 357; see also Kid Car NY, LLC v. Kidmoto Technologies LLC, 518 F. Supp. 3d 740, 754-55 (S.D.N.Y. 2021) ("A compilation of non-protectible facts is copyrightable if it 'features an original selection or arrangement of facts,' so that the selection of arrangement 'possesses at least some minimal degree of creativity.'") (quoting MyWebGrocer, 375 F.3d at 193). The Product Pages of the Frost Website meet these requirements.

First, the Product Pages of the Frost Website contain pre-existing material, facts, or data, such as the jewelry measurements and product photographs. See R. 56.1 Statement ¶ 35. Addressing the second and third requirements of a factual compilation, Plaintiffs' selection, coordination, and arrangement of the photographs and the descriptions of the jewelry is sufficiently original to merit copyright protection. See Boisson, 273 F.3d at 269-71 (finding the specific arrangement of letters in a specific format, and the creative choices in selecting colors for quilt, was sufficiently original to warrant copyright protection); see also Streetwise Maps, Inc. v. VanDam, Inc. 159 F.3d 739, 748 (2d Cir. 1998) (finding the selection, coordination, and arrangement of expressive elements to depict factual content sufficiently original to be copyrightable). Plaintiffs have arranged the photographs of the jewelry in a specific way whereby only one image can be enlarged at a time and potential customers can select other

photographs from a vertical bar of "thumbnails" located to the right of the product image. The relevant information about each piece of jewelry is also presented in a specific way on the Product Pages, through Plaintiffs' selection of font types, sizes, and colors. Plaintiffs had to determine where on the page to place the product images. Plaintiffs also had to determine where, in relation to the product image, to describe the weights and dimensions of the item, and how to arrange that information on the page (whether horizontally, vertically, or through a separate drop-down menu). Plaintiffs also included on the Product Pages a variety of buttons and other features, allowing potential customers to view feedback and reviews from customers, or add items to their "Cart" or "Wishlist." Additionally, Plaintiffs added banners on the bottom of the Product Pages to notify potential customers of ongoing sales and the different payment processors that may be used to complete a purchase. In combination, these features provide a unique user experience to visitors of the Frost Website. "[T]he originality requirement is not particularly stringent," and, here, Plaintiffs had to display at least "some minimal level of creativity" in arranging the relevant data on the Product Pages. Feist, 499 U.S. at 358; see also Crown Awards, Inc. v. Trophydepot, No. 03-CV-02448 (DRH), 2003 WL 22208409, at *4-5 (E.D.N.Y. Sept. 3, 2003) (finding the arrangement and number of boxes on pages of a catalogue, whether those boxes had borders, the arrangement of items within the boxes, the location of pricing legends, the fonts used, and design elements of the pages, formed a compilation of unprotectable elements that was itself protectable under copyright).

Plaintiffs have thus identified one protectable element of the Frost Website—namely, the layout, arrangement, and design of the Product Pages on the Frost Website. Plaintiffs argue that Defendants have copied the design of the Product Pages on the Frost Website. See Pls.' Mem. at 15. However, copying is only wrongful and amounts to improper appropriation if "a substantial

similarity exists between the defendant's work and the protectible elements of plaintiff's [work]." Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), 71 F.3d 996, 1002 (2d Cir. 1995) (citations omitted). "The test for substantial similarity between two items is whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'" Spin Master Ltd. v. 158, 463 F. Supp. 3d 348, 370 (S.D.N.Y. 2020) (quoting Hamil, 193 F.3d at 100). A side-by-side comparison of the two websites demonstrates that no ordinary observer could find them to be substantially similar.

To be sure, the Product Pages of the Frost and Bayam Websites contain some similarities. Both sites have white backgrounds. Both sites include a horizontal navigation bar with product categories at the top of the Product Pages. Likewise, the Product Pages for both sites include a large image of the particular piece of jewelry being viewed by a customer on the left side of the page, accompanied by thumbnail images of that same piece of jewelry, as well as information on the right-hand side of the page about the jewelry item, and a button for adding the item to the consumer's "Cart." However, that is where any real similarity between the two sites ends. Beyond those elements—which are common to a broad swath of e-commerce websites—the Product Pages of the Frost and Bayam Websites contain different design and functionality features that would not lead an ordinary viewer to regard their aesthetic appeal as the same.

First, and perhaps most notably, the distinct logo of each company is readily visible and displayed prominently at the top of each site, on the left-hand side of the page. On the Bayam Website, the word "BAYAM" appears in a stylized serif font in slate grey. Both capital letters "A" do not have crossbars. On the Frost Website, the words "FROST NYC" appear in a stylized serif font in blue grey. The capital letter "R" has a tail that extends under the capital letter "O"; and the capital letter "Y" has a terminal that extends over the capital letter "C." The Frost NYC

logo is also accompanied by a coat of arms with a shield, crown, wreath, and crest. Based on the differences in these logos and their prominence and visibility on each site's Product Pages alone, no ordinary viewer could regard the Frost Website and the Bayam Website as the same.

But the differences do not end there. Even elements that are common to both sites contain noticeable differences. For example, both sites have a horizontal navigation bar at the top of the Product Pages, which list the available categories of jewelry. On the Bayam Website, this bar is comprised of six categories, titled: "Chains," "Bracelets," "Pendants," "Necklaces," "Rings," and "Collections." The navigation bar on the Frost Website has seven different categories, titled: "Men's Chains," "Men's Pendants," "Chain & Pendant," "Men's Bracelets," "Men's Rings," "Watches," and "Ladies Jewelry." The names of the product categories on the Bayam Website are in a small compact font, whereas the names of the product categories on the Frost Website are in a larger, different font, with the letters evenly spaced out. The product categories on the Bayam Website are accompanied by a caret that has been inverted, whereas the categories on the Frost Website are accompanied by a downward facing arrow. Both sites display a principal image of the piece of jewelry accompanied by smaller images of the same piece in thumbnails. However, the Bayam Website features the thumbnails arranged horizontally beneath the principal image; the Frost Website has them arranged vertically to the right of the principal image. Additionally, a person can scroll through the thumbnails on the Bayam Website using grey arrows inside orange boxes.

Further, the name of the item on the Product Pages is displayed differently on each site. The Bayam Website has the product name in a thin, angular font, whereas the Frost Website uses a large, bold, rounded font. Directly beneath the product name, the Frost Website includes the weight of the product; the Bayam Website does not. The Bayam Website notes whether an item

is in stock; the Frost Website does not. Jewelry dimensions are displayed differently on the two websites. On the Frost Website, widths and lengths are listed in a grey font in individual boxes that have thin grey borders. Conversely, on the Bayam Website, available measurements are listed in a grey font with no borders. The two sites also display customer reviews differently. Customers on the Frost Website can access an item's reviews by clicking on a box on the left side of the page that contains the number of stars an item received and the words "Verified Customer Feedback" and "Reviews." On the Bayam Website, customers can access an item's reviews by clicking on a horizontal banner at the top of the page that contains a smiley face and arrow accompanied by the words, "+35,000 Happy Customer [sic], See Our Reviews," in a grey font.

Further, the two sites contain distinct features. For example, on the Bayam Website, the default number of items to purchase is one, but potential customers may alter that number using a box below the item's measurements marked "QTY." The Frost Website contains no such feature. Below the product description, the Bayam Website contains the logos of social media sites such as Facebook, Twitter, Pinterest, and Google+. The Frost Website contains no such feature. Below the item price, the Frost Website notifies potential customers that they can finance their purchase with Affirm, a third-party lender, and includes a link to a website where a customer can prequalify for financing. The Bayam Website contains no such feature. On the Bayam Website, below the navigation bar at the top of the page, there is another bar that links to previously visited pages and the home page. The Frost Website contains no such feature. On the bottom of the Frost Website, potential customers are informed of which payment processors they can use to complete their purchase with the logos of third-party processors such as Amazon Pay, PayPal, and Apple Pay. The Bayam Website contains no such feature. Situated to the right of the

horizontal navigation bar on the Bayam Website are icons of a magnifying glass and a shopping cart, which allow users to search for specific items or view items in their cart, respectively. The Frost Website contains no such feature.

In short, the differences between the Product Pages on the Bayam Website and the Frost Website are many. Considering these different design choices and aesthetics, no reasonable juror could find that the two sites are substantially similar. See, e.g., Latimore v. NBC Universal, Inc., No.07-CV-9338 (AKH), 2011 WL 13175958, at *1 (S.D.N.Y. Feb. 22, 2011), aff'd sub nom. Latimore v. NBC Universal Television Studio, 480 F. App'x 649 (2d Cir. 2012) (granting motion for summary judgment and dismissing a federal copyright-infringement claim where no substantial similarity existed between the protectable elements of the plaintiff's allegedly infringed work and the defendants' allegedly infringing work).

Accordingly, even if Plaintiffs had established ownership of a valid copyright, their claim of copyright infringement would fail as a matter of law. The similarities between the jewelry measurements listed on the Bayam Website and those listed on the Frost Website relate only to non-copyrightable elements. And, as it relates to the protectable design of the Frost Website, there is no copyright infringement because the two websites are not substantially similar. See Jean, 2002 WL 287786 at *5 ("In the context of a copyright infringement claim, summary judgment may be granted when any similarities between the works relate only to non-copyrightable elements or when no reasonable jury could find the two works substantially similar.") (citing Cantor, 51 F. Supp. 2d at 311). Plaintiffs therefore have not shown any wrongful copying of protected material, and summary judgment is thus granted in Defendants' favor on Plaintiffs' sixth cause of action.

**B.  Plaintiffs' Claim of Unfair Competition Based on Copyrighted Material**

Plaintiffs' unfair-competition claim under New York law is grounded in "Defendants'
unauthorized use of Plaintiffs' trade dress, layout and Copyrighted Content." Am. Compl. ¶ 64.
To the extent Plaintiffs premise their unfair-competition claim on Defendants' use of copyrighted
material, the claim is preempted by the Copyright Act.

"Under New York law, unfair competition includes 'taking the skill, expenditures and
labors of a competitor,' as well as 'misappropriat[ing] for the commercial advantage of one
person . . . a benefit or property right belonging to another.'" Broker Genius Inc. v. Gainor, 810
F. App'x 27, 31 (2d Cir. 2020) (alteration in original) (quoting Roy Exp. Co. Establishment of
Vaduz v. Columbia Broad. Sys., Inc., 672 F.2d 1095, 1105 (2d Cir. 1982)); see also Jacino v. Ill.
Tool Works Inc., No. 16-CV-1704 (BMC), 2017 WL 4480752, at *5 (E.D.N.Y. Oct. 6, 2017)
("The essence of unfair competition under New York common law is the bad faith
misappropriation of the labors and expenditures of another, likely to cause confusion or to
deceive purchasers as to the origins of the goods.") (quoting Jeffrey Milstein, Inc. v. Greger,
Lawlor, Roth, Inc., 58 F.3d 27, 34 (2d Cir. 1995)).

In the Second Circuit, "unfair competition and misappropriation claims grounded solely
in the copying of a plaintiff's protected expression are preempted by section 301 [of the
Copyright Act]." Computer. Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 717 (2d Cir. 1992)
(citations omitted); see also Buttner v. RD Palmer Enterprises, Inc., No. 13-CV-0342 (LEK)
(ATB), 2013 WL 6196560, at *3 (N.D.N.Y. Nov. 27, 2013) ("An unfair competition claim under
New York law is preempted by § 301 of the Copyright Act if it is based solely on copying
expression protected by the Act.") (citations omitted); Integrative Nutrition, Inc. v. Acad. of
Healing Nutrition, 476 F. Supp. 2d 291, 297 (S.D.N.Y. 2007) ("The Copyright Act preempts

18

unfair competition and misappropriation claims 'grounded solely in the copying of a plaintiff's protected expression.'") (quoting Kregos v. Assoc. Press, 3 F.3d 656, 666 (2d Cir. 1993)). In contrast, "unfair competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets . . . are not preempted" by the Copyright Act. Computer Assocs. Int'l, 982 F.2d at 717; see also Wnet v. Aereo, Inc., 871 F. Supp. 2d 281, 291 (S.D.N.Y. 2012) ("'[A] state law claim is qualitatively different if it requires such elements as breach of fiduciary duty, or possession and control of chattels.'") (quoting Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004)); Integrative Nutrition, 476 F. Supp. 2d at 297 ("'[U]nfair competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets have been held to satisfy the extra element test and avoid § 301 preclusion.'") (quoting Kregos, 3 F.3d at 666).

In the complaint, Plaintiffs' allegations concern Defendants' unauthorized use of "Copyrighted Content, for the purpose of promoting and soliciting business," such that consumers would likely "mistakenly believe that the Defendants' services and solicitations originate from, are sponsored by, or are in some way associated with Plaintiffs." Am. Compl. ¶ 64. Plaintiffs do not allege that Defendants breached any fiduciary duty or confidential relationship. Nor do Plaintiffs allege that Defendants misappropriated Plaintiffs' trade secrets.

At bottom, Plaintiffs assert a "reverse passing off"[6] claim, because their core allegation is that Defendants copied the Frost Website and attempted to pass it off as their own work product.

---

[6] Where unfair-competition claims are "predicated on a theory of 'passing off'— 'the essence of which is false representation of origin'"—courts distinguish between claims of "passing off" and "reverse passing off." Integrative Nutrition, 476 F. Supp. 2d at 297 (quoting Am. Movie Classics Co. v. Turner Ent. Co., 922 F. Supp. 926, 934 (S.D.N.Y. 1996) and citing Colour & Design v. U.S. Vinyl Mfg. Corp., No. 04-CV-8332, 2005 WL 1337864, at *6 (S.D.N.Y. June 3, 2005)). A "claim of 'reverse passing off'" involves "a claim that the defendant misrepresented the plaintiff's work as its own." Stadt v. Fox News Network LLC, 719 F. Supp.

See Integrative Nutrition, 476 F. Supp. 2d at 297 (concluding that "plaintiff's unfair competition claim [was] predicated on a theory of reverse passing off" and was preempted by the Copyright Act where the "primary allegation" was that "the defendants [had] plagiarized the plaintiff's website") (internal quotations omitted). And as other courts have held, unfair-competition claims under New York law that are premised on allegations of reverse passing off are preempted by the Copyright Act. See Shepard, 291 F. Supp. 3d at 476 ("'It is well-settled that a claim for reverse passing off predicated on the theory that defendant's product replicates plaintiff's expressions contains no extra element and is therefore preempted.'") (quoting Silverstein v. Penguin Putnam, Inc., 522 F. Supp. 2d 579, 608 (S.D.N.Y. 2007)); see also Integrative Nutrition, 476 F. Supp. 2d at 297; Colour & Design, 2005 WL 1337864, at *6; Am. Movie Classics Co., 922 F. Supp at 934.

What's more, Plaintiffs' allegations that Defendants acted with "intentional, willful, and malicious intent," Am. Compl. ¶ 67, do not save their unfair-competition claim from preemption. "A claim of unfair competition," under New York law, "requires evidence of [the] defendant's bad faith." Stadt, 719 F. Supp. 2d at 320 (citations omitted). However, as courts have found, the bad-faith element of an unfair-competition claim under New York law is not an "extra element" that defeats preemption. See Genius Media Grp. Inc. v. Google LLC, No. 19-CV-7279 (MKB), 2020 WL 5553639, at *15 (E.D.N.Y. Aug. 10, 2020), aff'd sub nom. ML Genius Holdings LLC v. Google LLC, No. 20-3113, 2022 WL 710744 (2d Cir. Mar. 10, 2022).

---

2d 312, 322 (S.D.N.Y. 2010); see also Shepard v. Eur. Pressphoto Agency, 291 F. Supp. 3d 465, 476 (S.D.N.Y. 2017) ("[The plaintiffs] allege that the defendants misrepresented the [plaintiffs'] goods as their own. That is known as 'reverse passing of[f].'") (citing Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28 (2003)) (internal quotation marks omitted).

Plaintiffs' claim is thus the type of unfair-competition claim that courts have held are preempted by the Copyright Act.[7] See, e.g., Shepard, 291 F. Supp. 3d at 475-76 ("[T]he Copyright Act . . . preempts claims 'asserted under the misappropriation branch of New York's unfair competition claim, which generally protects against a defendant's competing use of a valuable product or idea created by the plaintiff through investment of time, effort, money and expertise.'") (quoting Am. Movie Classics, 922 F. Supp. at 933). Accordingly, Plaintiffs' unfair-competition claim under New York law, based on a misappropriation of copyrighted material, is dismissed with prejudice.

## C.      **Plaintiffs' Trade-Dress Claims**

Defendants also move for summary judgment on Plaintiffs' (1) false-designation-of-origin claim under the Lanham Act; (2) trade-dress infringement claim under the Lanham Act; (3) claim under New York law for injury to business reputation; (4) common law, trade-dress infringement claim; and (5) common law, unfair-competition claim based on trade-dress infringement. Defs.' Mem. at 6-16. Plaintiffs have not responded to the merits of Defendants' arguments for summary judgment on these claims. Instead, Plaintiffs explain that they had offered to dismiss their trademark and trade dress-based claims, and that Defendants refused to stipulate to dismissal of those claims. See Pls.' Mem. at 3. Even though Plaintiffs have not

---

[7] At the March 3, 2023 conference, Plaintiffs directed the Court to the following cases in support of their argument that their unfair competition claim based on misappropriation of copyrighted material is not preempted: Electrolux Corp. v. Val-Worth, Inc., 6 N.Y.2d 556, 567 (1959) and ITC Ltd. v. Punchgini, Inc., 9 N.Y.3d 467, 476 (2007). Neither case supports Plaintiffs' argument because neither case involved the misappropriation of copyrighted material. Instead, those cases concerned unfair-competition claims based on a misuse use of the skills and labor of a competitor, see Electrolux Corp., 6 N.Y.2d at 559-67, and trademark infringement by a competitor, see ITC Ltd., 9 N.Y.3d at 471-74.

21

opposed Defendants' motion on the merits, the Court may grant Defendants' motion if Defendants have demonstrated an entitlement to judgment as a matter of law. See Rodriguez v. City of New York, No. 21-CV-1384 (GHW), 2023 WL 2368985, at *3 (S.D.N.Y. Mar. 6, 2023) (explaining that a court may grant an unopposed summary judgment motion when a movant demonstrates no genuine issue of material fact remains for trial); see also D.H. Blaire & Co., Inc. v. Gottdiener, 462 F.3d 95, 109-10 (2d Cir. 2006) ("Even where a non-moving party fails to respond to a motion for summary judgment, a court may not grant the motion first without examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.") (citation omitted).

"The *prima facie* case required for [false designation of origin and trade dress infringement under the Lanham Act] is the same." OffWhite Prods., LLC v. Off-White LLC, 480 F. Supp. 3d 558, 563 (S.D.N.Y. 2020). In order to prevail on these Lanham Act claims, Plaintiffs "must prove (1) that the [trade dress] is distinctive as to the source of the good, and (2) that there is a likelihood of confusion between its good and the defendant's [good]." Yurman Design, 262 F.3d at 115 (citing Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 210 (2000)). "The 'key element' of a trademark infringement suit . . . is 'that there is a likelihood of confusion or, in other words, that numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark.'" Wright v. New Moda, LLC, No. 17-CV-9737 (JGK), 2020 WL 4288377, at *4 (S.D.N.Y. July 27, 2020) (quoting Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1077 (2d Cir. 1993) and citing VIDIVIXI, LLC v. Grattan, 155 F. Supp. 3d 476, 480 (S.D.N.Y. 2016)). The ultimate question of whether there is a likelihood of confusion "is appropriate for resolution on a motion for summary judgment 'where undisputed evidence would lead only to

22

one conclusion as to whether confusion is likely.'" Id. (quoting Cadbury Beverages, Inc. v. Cott

Corp., 73 F.3d 474, 478 (2d Cir. 1996)).

The Second Circuit has articulated eight non-exclusive factors that a court should

consider to determine whether there is a likelihood of confusion between different marks. See

Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961). The so-called Polaroid

factors are:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products
> and their competitiveness with one another; (4) evidence that the senior user may "bridge
> the gap" by developing a product for sale in the market of the alleged infringer's product;
> (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was
> adopted in bad faith; (7) respective quality of the products; and (8) sophistication of
> consumers in the relevant market.

Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 115 (2d Cir. 2009) (citation

omitted). Generally, any one Polaroid factor is not treated "as dispositive in the likelihood of

confusion inquiry." Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 46 (2d Cir. 2000) (citing

Morningside Group Ltd. v. Morningside Capital Group, L.L.C., 182 F.3d 133, 139 (2d Cir. 1999)

and Vitarroz Corp. v. Borden, Inc., 644 F.2d 960, 965-67 (2d Cir. 1981)). But, "[t]he evaluation

of the Polaroid factors is not a mechanical process where the party with the greatest number of

factors weighing in its favor wins. Rather, a court should focus on the ultimate question of

whether consumers are likely to be confused." Tiffany & Co. v. Costco Wholesale Corp., 971

F.3d 74, 85 (2d Cir. 2020) (citation and internal quotation marks omitted). "[I]n an appropriate

case, the similarity of the marks factor can be dispositive and will warrant summary judgment for

an infringement defendant if the court is satisfied that the marks are so dissimilar that no

question of fact is presented." Nabisco, 220 F.3d at 46 (citation, alteration, and internal quotation

marks omitted).

Plaintiffs identified the Frost Website, including its layout and design, as the mark entitled to trade-dress protection. See Am. Compl. ¶¶13-14. As already discussed, however, see supra pp. 14-17, the Frost Website and the Bayam Website are not substantially similar. In other words, the two websites are so dissimilar that no question of fact is presented as to whether there exists a likelihood of confusion. As such, the Court need not examine the remaining Polaroid factors. See Nabisco, 220 F.3d at 48; Lopez v. Nike, Inc., No. 20-CV-905 (PGG) (JLC), 2021 WL 128574, at *7 (S.D.N.Y. Jan. 14, 2021), report and recommendation adopted, No. 20-CIV-905 (PGG) (JLC), 2021 WL 2207451 (S.D.N.Y. Feb. 16, 2021) ("Courts are not required to slavishly recite all Polaroid factors in their analyses, but rather need only consider sufficient factors to reach the ultimate conclusion as to whether or not there is a likelihood of confusion.") (citation and internal quotation marks omitted). Accordingly, Defendants are entitled to summary judgment on Plaintiffs' Lanham Act claims in their first and second causes of action.

Because Plaintiffs have not demonstrated that there is any likelihood of confusion between the Frost Website and the Bayam Website, they cannot succeed on their claims of common law, trade-dress infringement and unfair competition grounded in trademark and trade dress. See OffWhite Prods., 480 F. Supp. 3d at 563 (stating that trademark-infringement claims and false-designation claims under the Lanham Act have the same prima facie requirements as unfair-competition claims under the New York law); Reply All Corp. v. Gimlet Media, LLC, 843 F. App'x 392, 400 (2d Cir. 2021) (explaining that "New York Common law claims for trademark infringement are analyzed under the same framework as . . . Lanham Act claims") (citation omitted). Additionally, Plaintiffs have not pointed to any evidence showing that their mark is "distinctive" or that it has acquired "secondary meaning." See N.Y. Stock Exchange, Inc. v. New York, New York Hotel LLC, 293 F.3d 550, 557 (2d Cir. 2002) (explaining that "New York law

accords protection against dilution to marks that are distinctive as a result of acquired secondary meaning as well as to those that are inherently distinctive") (citation omitted). Therefore, Plaintiffs claim for injury to business reputation under New York General Business Law fails as well. See MZ Wallace, 2018 WL 6715489, at *14 (concluding that a trade dress that "has not acquired secondary meaning . . . cannot be protected under [New York General Business Law]").

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED**. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 74.

**SO ORDERED.**

DATED:       New York, New York
             March 29, 2023


_____
VALERIE FIGUEREDO
United States Magistrate Judge